The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez, all persons having any manner or form of business before the Honorable of the United States Court of Appeals for the Fourth Circuit are admonished to draw nine and give their attention, for the court is now sitting. God save the United States and this Honorable Court. You can all be seated. I don't normally sit in the middle chair, so I apologize in advance if I screw this up too badly. Hi, welcome to the Fourth Circuit. We're happy to see you all today. We have three cases to be argued. My understanding is that the first is number 23, 2309, and that our first lawyer that we're hearing from, how do I pronounce your last name? Malahi. Malahi? Okay. Mr. Malahi, we're happy to hear from you. Thank you, Your Honor. May it please the court, my name is Omar Malahi and I represent the appellants. The Supreme Court has many times over mandated that in fee-shifting civil rights cases, a successful plaintiff is entitled to prevailing market rates. The trial court in this case made an error of law when it determined that prevailing market rates were in Appendix B, which at the time was nine years old and had never been adjusted. The court said in its opinion that it was presuming that those nine-year-old rates were prevailing market rates and therefore reasonable. The court's error was to fail to perform a market rate analysis and to presume that Appendix B rates were market rates. Where does it say that? I'm looking at JA807. He does not say I'm presuming these rates are reasonable. He said the local rules provide presumptively reasonable hourly rates. I take your point that it's similar, but it's not exactly what the district court said, is it? Well, the court did say that Appendix B was presumptively reasonable. Right, but the court does not say I am presuming these rates are reasonable. He does not say that, does he? No. Okay, well, that's what you said he said. I apologize for the discrepancy, Your Honor, but the court made it very clear that he was assuming or presuming that Appendix B rates were market when they were not. So that, along with failing to conduct a market rate analysis, was the error. What specific, you keep saying the words market rate analysis over and over again. What do you think the district court was required to do, and I guess, as a frame for that, I take your point. The Supreme Court has said a prevailing plaintiff is presumptively entitled to fees. That's true. I take the court's point that you're entitled to reasonable compensation at a reasonable rate. But the court has also said these aren't supposed to turn into mini-trials, and we're not supposed to, at the end of the case that the district court was actually there to hear, supposed to, required to, or even want to have a whole trial about what the fee award should be. So at times your market analysis suggests to me that the district court needs to hold a mini-trial on what prevailing market rates are in Annapolis or something. And that does not seem consistent with what the Supreme Court has said district courts are supposed to do. My sense from the court is that they're supposed to do like rough justice and try to do a pretty good job, but they're not required, you know what I'm saying? This is not a finding of fact. So what specifically do you think a district court is required to do? Well certainly not hold a trial, and the court didn't hold a trial here on the rates. But the court has to take the available market rate evidence, and there was market rate evidence in this case on both sides, and the court needs to determine what the market rate is. Okay. And it can't substitute a nine-year-old matrix, which has been ravaged by inflation, and I think Amikai has indicated that between July 2014, when it was enacted, when it was promulgated, and February of 2024, the increase in the Legal Services Index has been 45%. At what point would you say that Appendix B became unreasonable? When along that timeline from the time it was promulgated to the time of your trial did that change? And how would we know to put a pin on that date and say, okay, now it's no longer, now it's an abuse of discretion to rely on that appendix? Well it could theoretically be an incorrect measure of market for attorneys who were highly skilled, maybe Supreme Court litigants. But let's put that part to a side. Let's assume for Judge Berner's question that the matrix was reasonable the day it was promulgated. On what day after that day did it become unreasonable? I say within a couple of years, a matrix becomes, if it's tethered to market, it becomes obsolete. And it really depends to some degree on what the inflation levels are. But I think it's clear at this point, or it was when this case was decided, that it was  obsolete. So can I ask a follow-up on that? It seems to me that your brief sort of toggles back and forth between two sort of different sets of arguments. One is the inflation argument. Let's just say I understand the inflation argument. But do you think the court error, okay, so put aside inflation. I know you don't, I'm not suggesting that for purposes of our decision we can put aside inflation. But I want to isolate out the inflation part for purposes of this question. What role, if any, do you think that matrices like this can play at all in setting, because there are parts of your brief that suggest none, that you just basically can't have matrices like this. I don't agree that you can't have matrices like this. And if you have a matrix, what weight, if any, is the district court allowed to give to them, assuming you can have a matrix and assuming that the matrix hasn't been ravaged by inflation? Well, if a matrix, for example, determines market rate and it's adjusted every year using the legal services index, I would say that's a good matrix. So your objection? And if it has enough brackets, if it has enough brackets to compensate, I mean, it doesn't stop at 20 years. Because I guess when I, the reason, the person, my question, when I look at like the district court's actual order, and there's this footnote where they talk about what the matrix is supposed to do, and they say, provide practical guidance to lawyers and judges, the factors that are established by case law. Like, the description of what the district court's order says about what this matrix is supposed to do. I understand you have objections to whether it's actually being implemented that way. But assuming it was being implemented the way this says, would you have any problem with it? I wouldn't have a problem with a matrix that is- Practical guidance to lawyers. That is adjusted- I know. I'm asking you to put that part aside. Like, assume there's only one day. There's only one, the matrix was promulgated yesterday. The matrix was reasonable market rates on the day it was promulgated. And the fee petition that comes before the court is the day after the matrix, right? Sure. Would you have any problem with the way the District of Maryland describes the purpose of this matrix? No. Okay. No. And I don't have problems with matrices. I think they make it easier for litigants and they make it easier for judges. But what's happening with this matrix is across the board, the district court is saying, these are presumptively market. And the district court is still doing that now. Well, may I ask, can I ask you, that's an argument you make in your brief too. With all due respect, this case isn't about what the District of Maryland is doing generally. This is a case about what this district judge did in this particular case, right? Yeah. But it, this is the practice of the district court. So I guess I don't see the relevance to what other judges in the District of Maryland are doing in other cases in terms of how we actually resolve this appeal. But you say it over and over in your brief and you just said it again, so I'm just trying to understand, what do you think is the legal relevance of the fact that you keep telling us about what other judges are doing in other cases? Because the court is rigidly not departing from appendix B. But we don't generally supervise the District of Maryland. We don't have, like, supervisory authority over the District of Maryland. We review appeals and specific cases from the District of Maryland, right? Yes, Your Honor. Is your challenge to, I mean, are you, are you challenging the matrix or are you, and or are you also challenging the district court's application of the matrix? We're challenging fundamentally the district court's application of the matrix, but at the same time, we're also challenging the matrix. But yes, the primary challenge is of the district court's use of the matrix when there was market rate evidence introduced in the case. And the district court talked about it, but pretty much ignored it. Amicus mentioned the way in which they understood the matrix to have been established, but there's no evidence in the record regarding how it was that the District of Maryland came to specific numbers in this matrix, is there? No, and there's no, there's no record of that. So we go anecdotally by talking to people who were on the committee back then in 2013 when they came up with this matrix. And it was really, they really came up with it in 2013. And again, that's not in the record. Can I ask you the inflation-related question? So you submitted these numbers about how you'd adjust this matrix for inflation. And tell me if I'm wrong, but my sense is, assuming the district court had adjusted all the numbers for inflation in the way that you say it should have, aren't most, if not all of the fees awarded in this case, all within what the ranges would be, even if the matrix was adjusted for inflation? No. Well, certainly they could be. Within the ranges? You wouldn't be at the top? Obviously, no one would be at the top of the range anymore, but if all the matrices were adjusted, all the numbers were adjusted for inflation, isn't it the case that at least some of the fee awards in this case would still be within the adjusted for inflation ranges? Yeah. That's right. Doesn't that seem like a pretty bad fact for your argument to what specifically the district court did in this case? Well, when you look at the top rate, and I generally have been getting the top rate, it's way outside the market.  But then the district court had some reasons to explain why the district court didn't think that necessarily this case warranted the top rate, because the district court said this was a relatively straightforward case that did not require a Cadillac legal representation. Right. But it also didn't require nine-year-old market rates either. But again, in my hypothetical, it adjusts the range for inflation and then says these are all within the inflation adjusted ranges. Yes, but the top rates aren't. But the district court said this case doesn't merit that. So the district court did, in fact, award the top rates, but the reason the district court gave for giving the top rates was because the top rates hadn't been adjusted for inflation. The district court didn't say, I've concluded these lawyers all deserve the top rates. In fact, he said kind of the opposite of that. Well, I don't think the court said that we wouldn't have deserved the top rates. Really? Doesn't he say this case was easy and straightforward and did not require, was not particularly complicating for all those reasons the rates should not be the top? Well. The court said that, right? Yes. Okay, that's an explanation of why the top rates wouldn't be warranted if I adjusted them for inflation, it seems to me. Yeah, but we often qualify for the top rates and the lawyers that got the top rates were 27 years of experience and 37 years of experience. So that doesn't make sense that the court wouldn't award the top rates and would just say, you know, arbitrarily, we're going to give you the top rates to compensate for the fact that appendix B hasn't been adjusted. And if you look at Newport News, for example, there the court used nine-year-old rates and then added 50 bucks an hour to the top rate, which was $200 an hour. And the Fourth Circuit said that was an abuse of discretion. So, that is not doing a market rate analysis. I ask that the court revand this case to the district court to do a proper market rate analysis with instructions that the district court cannot rely on appendix B as a basis for determining current market rates. Thank you, counsel. You'll have some time in rebuttal. Thank you, Your Honor. And we will hear from Mr. Pershing. Thank you. Good morning. Your Honor, may it please the court, Steve Pershing for AMICI, Public Justice Center of Baltimore and the Metropolitan Washington Employment Lawyers Association. An association of employee-side employment lawyers all over the D.C. area, including substantial numbers of lawyers who practice in Maryland. Picking up on the courts, I have two basic sort of related points I'd like to stress. One is that you can't create the market as a court. You have to recognize the market that exists out there. That's the point in the brief about the buyer's monopoly or the fancy word monopsony, where you have a market distortion that's constituted, right, where there are many sellers but only one buyer. That's a distortion or a collapse of a market, just like a monopoly is. That's one important point to be made. And then the other related point is about private attorney general schemes in general. Those schemes, meaning the concept behind all of the fee-shifting statutes in the country since the Fees Awards Act of 1976, is to encourage and at a minimum not to discourage lawyers from taking these cases who would otherwise earn their livelihoods with other cases. You're not supposed to discourage lawyers from taking these in and among the cases that they take for market rates. And that's true under Blum. That's true for public interest groups as well as private parties. So I think we understand the public policies behind these fee-shifting provisions and recognize them. My question is the question that we asked your colleague, and that is whether a matrix is ever an acceptable marker for judges to rely on in determining what is the reasonable market rate. And if so, at what point does it become stale and no longer presumptively reasonable? So first of all, I think actually, Your Honor, the way you stated that as a marker, that just means it's helpful. That means it's a factor. I don't think that's wrong, nor do I think there is a specific date, hour, and minute on which a factor becomes unusable where before it was dispositive. Right? It's a factor. So it's dispositive on day one and unusable on year 11, and there's some kind of shifting in between those 11 years where it no longer becomes presumptively reasonable? Is that what we're supposed to decide? I would say that we're here long past the time when the divergence became unacceptable that is made unacceptable the use of this matrix as not just presumptive, but conclusively presumptive, and not just as a marker, but as a conclusive determinant. Well, I don't think that the district court said it was a conclusive determinant. I think that the district court looked at it and looked at a number of other factors, and it was one factor considered. I think that that's what the court said, and I think it's proper for us to also look at what the court did. They had an affidavit of Michal Shinar, who we all know is a respected colleague, who described what reasonable weights are as far as she is concerned from her own experience, knows from her own experience. Then there was another affidavit by a fellow called Hoffman. The court didn't even mention that one. If the court wants to look to the market, it can't just say, well, we have an affidavit saying these higher rates are reasonable, but Appendix B. It's really what the court said. It didn't say, but Hoffman, or but we have other evidence. It said, but Appendix B. Isn't that an exercise of discretion, and isn't that the standard of review that we're compelled to apply? I think the court has discretion, and I think it's cabined by the abuse of discretion standard, and I believe that the use of a presumption that these old rates reflect the market is an abuse of that discretion. It's an erroneous legal principle that you can pretend this is the market. The real issue is the cases teach. It's the market rates that control. By the way, we can drop a footnote there about whether the Johnson factors allow for a drop in hourly rates because the case isn't a case of first impression or highly novel, and I don't think the cases teach that. I think the right reading of the misdeeds. Doesn't that seem obviously right? I wouldn't hire Elizabeth Prologar to litigate a straightforward breach of contract action, and I don't care if wherever she goes next she can bill $2,000 an hour. I would not give her $2,000 an hour under 1988 to litigate a straightforward slip-and-fall action. No slip-and-fall action warrants $2,000 an hour for your lawyer. I don't care who it is. The market probably would not allow that person to command such a rate, and that's the analysis the court... That's what the court has to look to. You can't just say, but Appendix B, if you know that inflation has chopped those rates' effectiveness as a measure of the market by that 50%. You know, the court, I think even in Grissom, this court actually went to a website and looked at inflation. The district court here didn't do that, and it is our understanding that in using these measures, these outdated measures, what the court was basically doing was accepting that this is the market. That was its error. Not that you don't have discretion as a district judge to determine these things on the multi-factor test and so on, but the court said this is the market. It said, but Appendix B. It didn't say, but evidence. It said, but Appendix B. So at some point you're in supposition land. You're substituting a blank supposition for the evidence they're supposed to look to. I'm not saying there's a trial or a long hearing. Most of these are done on the papers. These are not supposed to be, as the court mentioned, not supposed to be these big proceedings. See, my time has expired. This should not be a hard call that in an extreme situation this court has to step in because meaningful review of the fees is otherwise unavailable. And that's true for public interest groups as well as private practitioners. Thank you very much. Thank you, Your Honors. Mr. Leibowitz? Yes. Did I say that correctly? Yes, thank you. Good morning. May it please the court. My name is Neil Leibowitz. I'm here on behalf of the Appellees. I first want to make note of the fact that one of my clients, Fonz Nguyen, made the trip to be here today. Obviously, he and his wife, who is also a party, care a great deal about the outcome of this appeal. Your Honors have heard a lot about Appendix B this morning. Appendix B, with all due respect to opposing counsel, does not matter to my clients. What matters to them is that a judgment for attorneys' fees and expenses has been awarded to counsel for the appellants in the amount of more than $201,000. What matters to them is that this number not increase. They own and run a single nail salon in Oxon Hill, Maryland, and cannot afford to pay any more. Importantly, Appendix B should not be construed as the anchor appellants claim it is, and certainly not in this case. I've actually been racking my brain for more than a year now about this being the case that appellants chose to bring to this court, that this is the case that they sought appellate review. It doesn't make a lot of sense to me. Making this case about Appendix B requires making a simple case seem much more complex than it was. There are complex cases out there, cases involving actions, class actions, precedent-setting changes in the law, or cases more like discrimination cases involving matters approving intent and circumstantial evidence. This case resolves almost entirely around whether two workers responsible for cleaning appellants' nail salon worked enough hours to be entitled to overtime. There were no issues with exemptions as appellants were clearly not exempt. The complaint itself spanned only six and a half pages with the caption taking up nearly the entire first page. So I want to ask you some questions like we asked your friends on the other side. I want to start with one, though. Again, I want you to bracket the inflation issue for a minute. I just want to understand what you think the correct rule about a matrix like this is. Could a federal district court say without committing a legal error that would necessarily be an abuse of discretion that I'll never go above the top range of the matrix? This is a softball. I think the answer to that is easy. No. Could a district court say any request to go above the top range requires a special justification and absent a special justification I will not do? I don't know that I would use the phrasing special justification but I do believe it has to be justified because the ultimate rate needs to be reasonable. No, but the court would say. The analogy I'm thinking of is all these cases in the wake of the mandatory sentencing guidelines where the court says not only are the sentencing guidelines mandatory, but at least district court judges are not allowed to anchor to the guidelines either and say if a district court sentences within the guidelines and a appellate court is allowed to presume that sentence is reasonable but the Supreme Court has also said a district court is not allowed to presume that the guidelines range is reasonable and a district court who presumes the guidelines range is reasonable that in other words to say a district court who says I'm going to sentence within the guidelines unless you give me a good reason not to that would be a legal error. Do you think the same is true for these? Well I'm not the best person to ask that question because unlike counsel in the next two cases I don't practice criminal law so it's a little bit outside my area But if the district court said that maybe just treat that as the baseline for the question if a district court said look unless you give me some really good reason I will not sentence outside the range because I think the range is presumptively reasonable and it's your burden to rebut the presumption of reasonableness of the range Well it's difficult to say. What I would say is I don't believe that's what happened here. I understand that. So I don't know in the hypothetical whether or not that would be the case. Let me phrase it this way. Assume that I believe that a district court who said that would be committing a legal error. Why is that? Okay so let's talk about why that's not this case. Or another way to say it is if I believe that it would be a legal error for the district court to do it that does not in your view mean you lose this case right? I don't follow. I'm sorry. I'm so sorry. I was unclear. That was my fault. I heard it as I said. Assume for the sake of argument that I believe a district court who said what I just said the range is presumptively reasonable I will not go outside the range unless you give me a compelling reason to. If I believe that would be a legal error do you think you could still win this appeal? Even if I believe that. I think you do because I think you suggested that you did. So why is that not so that's just inviting you to tell us why is that not what the district court did here? Okay it's not what the district court did here because the court simply factored into its analysis the appendix B ranges but it applied it engaged in further analysis But what do you understand the language your friend quoted at the bottom of JA807 the very last sentence where the court said the rules preside presumptively reasonably hourly rights. Why is that not the problem I just described? Why is it not a problem that the district court said that? Because the court in this case and courts in other cases based upon my reading of the decisions don't limit it to that. They make reference to that dynamic but then they engage in further analysis which is what the court did here. The court took that as one factor amongst others and as opposing counsel said appendices in and of themselves are not inherently problematic. This court has said that they can be used. They're in fact provided for expressly under federal rule 34 that allows for local rules and there's a comment that talks about the use of appendices I believe. There's also there's another local rule it's not just appendix B. There's another local rule that says that you are I think it's 1.9. You're supposed to provide to us what your rate is and what the rate is in the community and something that's been lost in the mix here is that we did that. The appellees provided a 21 page affidavit from Mr. Hoffman it's a declaration but it's an affidavit. It's a sworn affidavit and he lays out an excruciating detail. I was very impressively surprised when I got it back because I had no input in any sense back to me and I'm like wow 21 pages okay great. He really poured his heart and soul into that to explain why he reached the conclusion that he reached. And the district court never referenced him or any of his conclusions so what do we do with that? So the district court did make reference to having reviewed the record and having reviewed the submissions of the parties. I know but in explaining the rate it's awarding the court doesn't say I'm persuaded by Mr. Hoffman and so I'm going blank. The court never says that. Correct. It did not make that express assertion but you can infer from what the court did said that he concurred with what Mr. Hoffman had asserted because as I noted in our brief the findings of the court fairly closely mirrored what Mr. Hoffman said on a number of levels. So something that I also think is lost in the mix is there are scenarios involving appellant's counsel where the court has awarded above appendix B rates and opposing counsel highlighted those but also admitted that those were situations where the issue wasn't contested. And in fairness to the court yes the court's supposed to engage in the same analysis but as a practical matter they don't respectfully. If something is not opposed and the party that isn't opposed has the burden it's unopposed. So I don't think that's to me that's apples and oranges. This case was opposed. We filed a 35 page opposition. We filed a 21 page affidavit for Mr. Hoffman. We filed additional exhibits. We noted objections with regard to all the time entries that were submitted. I mean this was a vigorous opposition because this was a very very big deal to my clients. The amount being sought was dramatically more than the amount that was awarded which we were very thankful for. The reduction was primarily due to the reduction in the number of hours not the reduction in the hourly rate but it's only the hourly rate that's been appealed. That opposition was clearly taken into account by Judge Hwang because otherwise he would have found a higher rate. In other words, the ones that he, the fact that he referenced Ms. Chenard's I may not be getting the name wrong but her affidavit and not Mr. Hoffman's affidavit he mentioned things about that affidavit saying that it presented evidence of X, Y, and Z but then he then said but X, Y, and Z don't mitigate in favor of higher rates here. The implication being that he looked at other evidence, the evidence that we submitted. Do I wish Judge Hwang had said I've been convinced by Mr. Hoffman's affidavit that I shouldn't award higher rates here? Sure, that would have made my job a lot easier. But the judge didn't do that but that doesn't mean that that's not what happened. He did say that he reviewed the record and reviewed the submissions and so we take the position that we presented evidence of market rate something that was lost in the mix in the briefing from appellants and that in doing so we demonstrated to the appellant that the rate was not appropriate here particularly given the relatively straightforward nature of the case. This was a case in which there was no summary judgment filed, there wasn't a motion to dismiss filed. The case proceeded, went through discovery, went to trial, it was over. In a case like that the case law makes clear that the rates awarded were reasonable. So what about the inflation problem? So the judge references, he does expressly reference the inflation issue. He says that in light of inflation he will award the high end of each of the ranges applicable to the various attorneys for appellants. So that's the way that he accounted for it. But he's still anchoring to old data that hasn't been adjusted for inflation. If you anchor to garbage numbers, the numbers are still garbage even if you, I'm not saying the numbers are garbage. Assume for the sake of argument that the numbers were completely fanciful and arbitrary, just take that aside. Say we had a matrix but the numbers in the matrix are fanciful and arbitrary. You wouldn't fix the problem by saying well, fair point, the numbers are fanciful and arbitrary but I'll give you at the top of the range of the fanciful and arbitrary ranges. You can't anchor to something unless that something has some level of validity. Sure. So a couple things there. Number one, my reading of the case law, there was a case referenced by appellants counsel on this issue of interest and it said that the court could do one of two things. It could either add interest to apply for the increase in interest between the start of the case and a later point in the case. It was an administrative case and it was in stages and perhaps there was one award earlier and one award later and they said the court had to account for the difference. But you didn't have to do that if the court only looked at the matter in present day. Which Judge Hwang doesn't say otherwise. He doesn't say well I'm adding interest because or I'm adding inflationary figures because looking back to 2020 when the case was filed up through 2023 which is now he just said this is the rate I'm awarding. So you could read into that that it's already been factored in because in his mind he's awarding present date rates. And then the other point I forgot. Well I don't think we can determine what's in his mind unless it's on the paper. So in his opinion. So I don't think it's right that we can assume what he was thinking when he didn't write it down and what I you know what our case law says and I don't know what case it is you're referring to but that it's that we need to the district coordinators to look at specific evidence and I'm reading from the Plyer case which is a Fourth Circuit case on reasonable fees specific evidence of the prevailing market rate in the relevant community for the type of work for which the fee is sought. That's what the district court was required to do. And so here repeatedly and you're correct that there is reference to the evidence that was submitted but repeatedly the court turns back to the matrix that is in fact very very old. And so it does seem like the fact pattern that Judge Hytens put forward of the matrix being the presumptive cabined rate is precisely what the district court did. Well we take the position that the court factored appendix B into what it did but then it did also factor the Johnson factors into its analysis and we also point out that that judge Well the court says under these circumstances these circumstances meaning the consideration of the evidence the court will not approve hourly rates above those contemplated by the local rules. So it seems to me what the court was requiring was for counsel for the plaintiffs to prove that there was some reason to go outside of the matrix. That the burden wasn't to prove to show which is what the case law says specific evidence of prevailing market rates but rather that the burden placed on the plaintiffs was to prove why the court should go outside of the top or outside of the matrix at all. And that's not the standard that's been established by this court. So there is an asterisk in appendix B that talks about the dynamics of the court's use of appendix B and it does provide for going above and beyond. It's quoted in our brief and my take would be that that's what was done here. That the court looked at appendix B and then applied the other factors and dynamics at play in the case and reached a conclusion. I would also note again I can appreciate that the court did not expressly reference the Hoffman affidavit but the findings that were reached by the judge jive with the findings of the Hoffman affidavit which explained why those rates are market rates in the community. There was also a whole host of cases. Are they market rates in the community? Well yes so we demonstrated that in part by showing what lawyers had voluntarily sought in the very county where opposing counsel practices and they sought appendix B rates. So the determination of what's a market rate in the community is based on what attorneys routinely seek in a market where there's a matrix that sets forth what attorneys are supposed to seek? Well there is a matrix but it doesn't require them to seek figures within it. The point being that they voluntarily sought rates within those ranges because they felt that they were reasonable. I mean I can use myself as an example. Admittedly it's anecdotal but I almost exclusively plaintiff's employment law. I've never charged a fee outside of the $300 to $400 range in my career because people can't afford it. My clients often times have lost their jobs. If I had my rates at that higher rate I would have few if any clients and I think these other attorneys in these other cases feel similarly and that's why they seek rates of somewhere between whatever the bottom of the range is in the 475. Most of these folks are at the 20 and above rate. The folks that are submitting these fee petitions but they stop at the 475 themselves because they've deemed it themselves to be reasonable. They do it even in cases where they're default judgments. I provided cases of default judgments where people do it and they would not be constrained to do that. They could seek higher figures. They could file affidavits like appellants counsel did here and seek higher rates but they don't because it's not the reality. It's not what people charge. What people do charge is what's expressed in Mr. Hoffman's affidavit. He talks about when he charges 350 he gets great pushback and difficulty getting clients. There are different dynamics in these cases and they're actually very attractive and actively sought out and so there is competition for them which would lower the rates because clients could comparison shop between lawyers and law firms. Our position is that maybe it's a coincidence. I said my focus is not appendix B. I know the court has to address that on some level. My focus is this case and in this case the amount of fees awarded were reasonable. That's demonstrated by the multitude of reasons that we provided in our briefing. It's not as simple as the matrix. The matrix obviously came into play. The court expressly referenced it. I'm not going to deny that but our position is that the evidence that we presented to the court was taken into account by the judge and that the decision reached by the judge was reasoned and reasonable. Certainly reasoned and reasonable enough to not constitute an abuse of discretion. Abuse of discretion is a fairly high standard. I don't see an abuse here. I see someone who I see a judge who appeared at the bench trial in this case ruled on evidence listened to witnesses himself wrote a lengthy opinion laying out the liability issues then got a fee petition had massive submissions submitted to him and took his time and attention and paid it to those submissions and reached a reasoned conclusion. Our position would be that it's not really about Appendix B. It's about whether or not the sums awarded in terms of hourly rates were reasonable. Our position would be for all the reasons again that we expressed in the affidavit they were. I did want to take a quick look at my notes to see if there was something I needed to touch on that some other folks said. Oh, there was one thing that Mr. Pershing said that I wanted to comment on. There was this comment, although the court kind of questioned about it, that the Johnson factors only equate with the number of hours and not the hourly rate and we cited multiple cases that said that's not true. That it applies to both the hourly rate and the number of hours. That was expressly stated in numerous cases and as the court pointed out that only makes sense as we cited in our briefing. A jaywalking case is not the same as a first degree murder case. You can't charge the same hourly rates for every case. The rates that were awarded in this case are reasonable for this case. Let me just, bear with me one second. I think I pretty much covered the basis, but I have a couple minutes left if your honors have any questions. Thank you very much. Thank you all. We're happy to hear from you. Thank you, your honor. One point I'd like to raise preliminarily is we do agree that Johnson factors can be applied to the rates and to the billable hours or the reasonable billable hours, but not every Johnson factor can be applied to both and although there's conflicting... What says that? Fourth circuit precedent. What case? Blum versus Stinson says that. Says what? Blum versus Stinson says that the complexity and novelty as a general rule go to reasonable number of billable hours and not the rates. And it says that on page 898 and 899. As a general rule. Yes, as a general rule. There's conflicting fourth circuit precedent on this issue. There's a couple of fourth circuit cases that cite Blum or one that cites Blum for that proposition and but anyway Blum says that. The council was suggesting in his argument that that there are attorneys who seek lower rates even in this court, but it's not voluntary if somebody seeks lower rates because they can't get any more because of appendix B. And the court really can't determine can't set the market rate. It can't create the market. The market is the market and it is something independent that the court has to make findings on. And finally with regard to expectancy the by setting by continuing to adhere to unadjusted appendix B rates lawyers should not be expecting to get those rates necessarily because they are not consistent with market. Lawyers should be expecting to get rates that are consistent with market and that was one of the factors that the judge relied on. Unless the court has any further questions, I have nothing further. Thank you very much. We thank all the lawyers for their arguments. We will come down and greet counsel and proceed directly to our next case.
judges: Toby J. Heytens, Nicole G. Berner, Elizabeth W. Hanes